Wharton v. Barry, Id. 62; Carpenter v. Insurance Co., 31 Hun, 78; Bull v. Babbitt, 1 How. Pr. 184; Briasco v. Lawrence, 4 N. Y. Supp. 94. But it need not state how affiant knows that the witnesses will testify as therein set forth. Myers v. Village of Lansingburgh, 8 N. Y. Supp. 92.

The affidavit must be positive. Franklin v. Underhill, 2 Johns. 374; Manning v. Downing, Id. 453.

An affidavit that defendant had stated "the facts of his defense," instead of "the case," is insufficient. Rickards v. Swetzer, 3 How. Pr. 413. Also an affidavit that defendant had stated "his case in this cause." Ellis v. Jones, 6 How. Pr. 296. But an affidavit that defendant had stated "the facts of this case" is sufficient. Jordan v. Garrison, 6 How. Pr. 6.

Where a party who is an attorney acts for himself, he need not swear as to any statements to counsel as to the materiality of the witnesses. Ackerman v. Delude, 29 Hun, 137.

The opposing affidavits, as well as those in support of the motion, should state what is expected to be proved by the witnesses, and the grounds for the belief that they are material. Bank v. Hill, 22 How. Pr. 29; Price v. Water-Works Co., 16 How. Pr. 51; Kelly v. Maltham, 2 Wkly. Dig. 173.

An affidavit for a change of venue need not state that the action is transitory. If it is not transitory the opposing party must show it. Baker v. Sleight, 2 Caines, 46.

WHAT AMOUNTS TO CHANGE OF VENUE—REFERENCE. Where an action commenced and made triable in one county is referred for trial to a referee who resides in another county, and is so described in the order of reference, the place of trial is not thereby changed. Wheeler v. Maitland, 12 How. Pr. 35.

AMENDMENTS OF COMPLAINT PENDING MOTION. An amendment of the complaint which changes the place of trial to the county in which plaintiff resides does not affect a pending motion by defendant for a change of venue to another county for convenience of witnesses, though defendant had not served an amended answer, if the grounds of the motion are adapted to the amended as well as the original complaint. The Code provides that amendments shall be without prejudice to proceedings already had. But the amendment supersedes a motion to change to defendant's residence, so far as it is founded on the objection that the original county was not the proper one. Toll v. Cromwell, 12 How. Pr. 79.

An amendment of the complaint of course changing the venue pending a motion to change to another county, on the ground that a fair and impartial trial cannot be had in the original county, prevents the hearing of the motion in the original county, but it may be heard in the county designated by the amendment. Moulton v. Beecher, 1 Abb. N. C. 193.

---

## PEOPLE v. MANHATTAN MUT. FIRE INS. CO.

*(Supreme Court, General Term, Third Department.* November 26, 1890.)

MUTUAL FIRE COMPANIES—INSOLVENCY AND DISSOLUTION—VIOLATION OF LAW.

A mutual fire insurance company was permitted by its special charter to do business upon its capital of premium notes. On an extension of the charter, the provisions of the general act for the incorporation of fire insurance companies (Laws N. Y. 1853, c. 466) were made applicable to it. It afterwards obtained, under those provisions, another extension of its charter, a change of its name, and larger powers for business; but it did not appear that the requirements of the act as to amount of capital, etc., necessary to such changes, were complied with, unless the premium notes held by the company were regarded as stock or capital notes. Thereafter the company surrendered to the makers a great part of such notes, treating them as deliverable to the makers according to the usual course of business, and the provisions of the act respecting premium notes. *Held,* on application of the attorney general, that the business of the company must be closed, on the grounds of its insolvency and violation of law, unless its capital was made good according to the requirements of the act.

Appeal from special term, Albany county.

Action in the name of the people of the state against the Manhattan Mutual Fire Insurance Company of New York, of Goshen, N. Y., for a dissolution of defendant corporation. Plaintiff appeals from an order of the special term denying an application made by the attorney general for a preliminary injunction, and the appointment of a temporary receiver, and also denying motion for an order to show cause why the business of such company should not be closed, under section 24, c. 466, Laws 1853. This action was brought by the attorney general under section 1785 of the Code of Civil Procedure to dissolve the corporation and wind up its affairs, upon the ground that it was insolvent, and had violated the provisions of the law under which it was incor-

porated, and of the statutes binding upon it.   From the undisputed facts it appears that the original name of the defendant was the Orange County Mutual Insurance Company; that it was incorporated in 1837 under a special act for that purpose.   Chapter 73, Laws 1837, amended by chapter 305, Laws 1849. By chapter 30, Laws 1857, its charter was extended for 20 years, and the provisions of the general act "to provide for the incorporation of fire insurance companies" (chapter 466, Laws 1853) were made applicable to the company, except as to its mode of incorporation.   In 1875, under section 18 of the last-mentioned act, it extended its charter for 30 years.   Under its charter previous to 1888, the company was limited as to the insurances it should make to the county of Orange, and the counties adjoining Orange.   Its board of directors must be citizens and residents of the county of Orange.   In 1888, the company upon its application and proceedings had in alleged pursuance of section 19 of the general act of 1853, as amended by chapter 208, Laws 1875, was permitted by the superintendent of the insurance department to amend its charter by changing its former to its present name, and by becoming vested with the same privileges under chapter 466 of the general act of 1853, as if it had been originally organized under that act.   The main effect of such amendment was to remove the restrictions of its previous charter, and enable it to do business anywhere.   In its application for the amendment to the charter, it was recited, and the fact was, that the assets of the Orange County Mutual Insurance Company consisted of 172 notes, of the total amount of $52,712.15, being notes given on application for insurance, and that no liabilities existed against the company.   These notes were a part of applications for insurance, and were in the following form: "In consideration of policy No. ———, dated the ——— day of ———, 188—, we promise to pay 'the Manhattan Mutual Fire Insurance Company of New York' the sum of ———, at such time and by such installments as the directors of said company shall assess and order, pursuant to the charter and by-laws thereof; and it is hereby expressly agreed that this note is not transferable, and the liability is only for the losses and expenses incurred by said company, and that no liability is incurred beyond the face amount thereof.   The secretary is authorized to insert the number and date in this note, and, in event of renewal or reissue, to change the number and date to that of the new policy.   ———, 188—."   The officers of the company made affidavit that, "within thirty days after said company receives authority to do business, a policy will be issued upon each of said applications and notes."   In May, 1890, the superintendent of the insurance department caused an examination to be made under section 24, c. 466, Laws 1853, of the affairs of defendant.   The examiners reported, and the fact was that the defendant, since it was authorized to do business under its new name, had canceled and surrendered to the makers 116 of the 172 notes aforesaid of the total amount of $38,832.10, and that the accumulation of profits invested did not amount to $50,000.   Other facts were reported respecting the condition of the company, and the superintendent of the insurance department reported to the attorney general that in his judgment the interests of the public required that the business of the company should be closed.

Argued before LEARNED, P. J., and LANDON and MAYHAM, JJ.

*Charles F. Tabor,* Atty. Gen., (*I. H. Maynard,* Dep. Atty. Gen., of counsel,) for appellant.   *Bacon, Leeds & Van Steenbergh,* (*Henry Bacon,* of counsel,) for respondent.

LANDON, J.   The learned judge at special term held that the defendant had wholly explained its various transactions to which the department objected, except that with respect to the surrender to the makers of the notes held as capital stock.   With respect to its capital stock, the learned judge held that it had not, by the surrender of its notes, violated the law.   In this respect we think the learned judge erred.   Section 18, c. 466, Laws 1853, under which

the Orange County Mutual Insurance Company, in 1875, extended its charter for 30 years, provides that "every mutual insurance company heretofore incorporated under the laws of this state, and doing business with a capital in premium notes of at least $50,000," is authorized to extend its charter under the act cited. We assume, as the counsel for both parties concede, that when the Orange County Company, in 1888, applied for a change of name, and to amend its charter conformably to the general act of 1853, its capital was in premium notes of at least $50,000. Under its charter it did not have the extensive privileges which an organization under the act of 1853 would secure to it. Its capital of $50,000 in premium notes was much less valuable as a security than the capital of a mutual company under the act of 1853 is required to be. By section 6 of that act it is provided as follows: "Nor shall any mutual insurance company in any other county of the state [than New York or Kings] commence business until agreements shall have been entered into for insurance with at least 200 applicants, the premiums on which shall amount to not less than $100,000, of which $20,000 at least shall have been paid in cash, and notes of solvent parties, founded on actual *bona fide* applications for insurance, shall have been received for the remainder." Section 13 of the general act provides: "All notes deposited with any mutual insurance company at the time of its organization as provided in section 6 shall remain as security for all losses and claims until the accumulation of the profits invested, as required by the eighth section of this act, shall equal the amount of cash capital required to be possessed by stock companies organized under this act; *i. e.* $50,000, the liability of each note decreasing proportionately as the profits are accumulated; but any note which may have been deposited with any mutual insurance company subsequent to its organization, in addition to the cash premium on any insurance effected with such company, may, at the time of such insurance, be relinquished and given up to the maker thereof or his representatives, upon his paying his proportion of all losses and expenses which may have accrued thereon during such term." This section speaks of two classes of notes. The first are those deposited at the time of the organization of the company, and serve as capital until $50,000 of surplus profits can be accumulated and invested as capital. Section 6 provides that "each of said notes shall be payable in part or in whole at any time when the directors shall deem the same requisite for the payment of losses by fire or inland navigation, and such incidental expenses as may be necessary for transacting the business of said company." The second class of notes mentioned in section 6 above quoted are premium notes in part payment of insurance, and may be surrendered as specified in that section. These premium notes form no part of the capital of a mutual company organized under the act of 1853. The capital of such a company must be either capital or stock notes and cash, or both together, with the authorized investments of surplus earnings, the latter, as it is accumulated, replacing the former; and, when reaching $50,000, entirely superseding it. But the deposit notes must be retained until the $50,000 shall be accumulated.

Now, the Orange County Mutual Insurance Company, by virtue of its special charter, was permitted to do business upon its capital of premium notes. Under section 19 of the act of 1853 it sought to change its name and avail itself of the larger powers conferred by the act of 1853. It is obvious that it ought not to pass from its narrow field of powers and operations to the wider one contemplated by the act of 1853, except by becoming financially as strong as if originally organized under that act. Section 19 provides that it could change its name and avail itself of the powers conferred by the act of 1853, by complying with the regulations therein prescribed, "and upon the same proceedings being had as are required by the tenth section of this act," (1853.) The part of such proceedings here material to be inquired into is the requirement that the company "has received and is in actual possession of the cap-

ital, premiums, or *bona fide* engagements of insurance, or other securities, as the case may be, to the full extent and of the value required by the sixth section of this act." It did not have 200 applicants for insurance. It did not have $80,000 in stock notes. It did not have $20,000 in cash. It did have 172 applicants for insurance, and $52,712.15 of notes. It did not have any cash. It is not clear to us how it was entitled to amend its charter under section 19 of the act of 1853, but the attorney general and superintendent of insurance evidently thought that the notes which it did have were stock or capital notes, and that, as it had been permitted to extend its charter under section 18 as a mutual company "doing business with a capital in premium notes of at least $50,000," it might be permitted to organize under the act of 1853 with that amount of capital in stock notes. Be this as it may, the company was permitted to change its name and amend its charter so as to be entitled to the privileges conferred by the act of 1853. The defendant now claims that the notes which it made the basis of its amended charter were premium notes, and not stock notes, and therefore deliverable to the makers according to the usual course of business respecting premium notes. One or the other of two conclusions seems irresistible. If the notes were premium notes, then the company did not comply with the terms of the act of 1853 with respect to capital stock, and has ever since been doing business upon a capital unauthorized by that act, and far below its requirements; or, if the notes were stock notes, then the company has violated the act in surrendering them to the makers, before it had invested or accumulated from its surplus earnings the sum of $50,000. In either event the defendant should comply with the statute or stop business. This motion was treated and defended as if it were itself the order to show cause. We are unwilling under the circumstances to suspend the corporate existence of the defendant, provided it is able and willing to make good its capital. We reverse the order below, but reserve the case for further and final order until the February term of the court. The defendant may, at the opening of such term, show that it has made good its capital. The certificate of the superintendent of the insurance department may be offered as evidence of that fact, or other evidence may be submitted. All concur.