(12 Misc. Rep. 556.)

### PEOPLE v. EQUITABLE MUT. FIRE INS. CO.

(Common Pleas of New York City and County, Special Term. May, 1895.)

**1. MUTUAL INSURANCE COMPANY—DISSOLUTION.**

Code Civ. Proc. § 1785, subd. 4, which authorizes the dissolution of an insurance company where it becomes insolvent or unable to pay its debts or has violated any law, is limited by the later provision of Laws 1892, c. 690, § 43, providing that, if it appears to the superintendent of insurance that the assets of a mutual company are insufficient, notice shall be given to its officers to make good the deficiency, and that, if it shall not be made good within a certain time after notice, it shall be subject to dissolution.

**2. SAME—INSOLVENCY.**

In determining the solvency of a mutual insurance company, account must be taken of its capital stock notes, which Laws 1892, c. 690, §§ 111. 113, provide shall be payable as the directors deem necessary for loss or incidental expenses, and shall remain security for loss and claims until the accumulation of profits shall equal the amount of cash capital.

Action by the people to dissolve the Equitable Mutual Fire Insurance Company of New York. Plaintiff moves for the appointment of a temporary receiver. Denied.

The Attorney General and Benno Loewy, for the motion.
Kenneson, Crain & Alling, opposed.

BOOKSTAVER, J. Upon the 30th day of April, 1895, the above-entitled action was begun by the attorney general to "vacate the charter of, annul the existence of, and dissolve the defendant corporation." The complaint also prays for an injunction pendente lite restraining the defendant, its officers and agents from transacting any corporate business, or in any manner transferring, disposing of, or interfering with any of its property or assets, and for the appointment of a temporary receiver of such property and assets, and for the appointment of a permanent receiver upon the dissolution of the defendant.

As above indicated, the particular question now presented for decision is the application for a temporary receiver. The complaint alleges that the defendant is a mutual fire insurance corporation, claiming to act as such under chapter 690 of the Laws of 1892; that the superintendent of the insurance department became satisfied, as a result of an examination made by him into the affairs of the defendant, upon or prior to the 26th day of April, 1895, that the defendant had exceeded its powers, and failed to comply with the provisions of law binding upon it, and was conducting its business fraudulently and irregularly, and reported the facts disclosed by such examination to the attorney general; that the capital of the defendant had not been paid in, as required by the statute under which it claims to have been organized, and as provided by law; that it is insolvent and unable to pay its debts, and has violated various provisions of the law under which it was incorporated and of various other acts of the legislature of the state of New York binding upon it, and has become liable to a judgment dissolving it and forfeiting its corporate rights, privileges, and franchises; and

that its liabilities, as appears by the report of the superintendent of the insurance department, exceed its assets by at least the sum of $53,091.19.

The counsel for the plaintiff argues that this application is made under sections 1785 and 1786 of the Code of Civil Procedure, and not under section 1798, although leave to bring an action under that section was obtained upon the 29th day of April, 1895.   Section 1785 is as follows:

"In either of the following cases an action to procure a judgment, dissolving a corporation created by or under the laws of the state and forfeiting its corporate rights, privileges and franchises, may be maintained as prescribed in the next section:  (1) Where the corporation has remained insolvent for at least one year.  (2) Where it has neglected or refused, for at least one year, to pay and discharge its notes or other evidences of debt.  (3) Where it has suspended its ordinary and lawful business for at least one year.  (4) If it has banking powers, or power to make loans or pledges or deposits, or to make insurances, where it becomes insolvent or unable to pay its debts, or has violated any provision of the act by or under which it was incorporated, or of any other act binding upon it."

To quote from the plaintiff's brief, "the application for a receiver is made upon the broad ground that the corporation is insolvent; that it is entirely unable to pay its debts, and comes exactly within section 1785, subd. 4." Such being the ground of the application, I do not think it ought to be granted.

Section 43 of chapter 690 of the Laws of 1892, entitled "Impaired Mutual Insurance Corporations," provides that:

"If it appears to the superintendent from an examination made by him or by an examiner appointed by him that the assets or capital of any mutual insurance corporation are insufficient to justify its continuance in business, he shall determine the amount of such deficiency and issue a written requisition to the officers of the corporation requiring them to make it good within a time to be specified therein, not less than thirty nor more than ninety days from the service of such requisition. Such service may be made by mail, directed to the corporation at its place of business in this state specified in its charter. Upon the service of such requisition the directors of the corporation shall forthwith cause such deficiency to be made good, and proof to be filed with the superintendent within the time specified in the requisition that the same has been made good. For any losses accruing upon new risks taken after the expiration of such time, and before such deficiency shall be made good, the directors of the corporation shall jointly and severally be personally liable therefor. If such deficiency shall not be made good within the time specified in such requisition, and satisfactory proof thereof filed with the superintendent, the corporation shall be deemed insolvent and may be proceeded against by the attorney general as an insolvent corporation in the manner authorized by law."

There is no allegation in the complaint, nor do I find any proof in the affidavits, that any such notice has ever been given to the officers of the defendant requiring them to make good the alleged deficiency. Section 43, just quoted, must be taken as limiting, in case of proceedings against mutual insurance companies, the more general and prior provisions of section 1785 of the Code of Civil Procedure relative to actions for the dissolution of corporations upon the ground of insolvency.

But, if the question were so presented that its decision turned upon the solvency or insolvency of the defendant, there is no suffi-

cient proof of its insolvency. No account was apparently taken by the department of insurance, in its computation to determine the solvency of the defendant, of the capital stock notes amounting to $160,000. Such notes are provided for in sections 111, 112, and 113, c. 690, Laws 1892, and must, in my judgment, be reckoned as assets in an estimate of the financial condition of the corporation. Section 113 declares that "All capital stock notes of any domestic mutual fire insurance corporation shall remain as security for all losses and claims until the accumulation of profits invested as required by law shall equal the amount of cash capital required to be possessed by stock fire insurance corporations, the liability of each note decreasing proportionately as the profits are accumulated"; and section 111 declares that such notes "shall be payable in part or in whole at any time when the directors shall deem the same requisite for the payment of losses and such incidental expenses as may be necessary for transacting the business of the corporation."

But leaving the question of the present solvency of the defendant, and assuming that the basis of the action and this application is the alleged violation by the defendant of some provision of the act by or under which it was incorporated, or of any other act binding upon it (section 1785, subd. 4), I am not convinced that there has been any such violation. It is alleged in the complaint, and there is an attempt in the affidavits to show, that the $40,000 cash capital required by section 111, c. 690, to be paid in as a prerequisite to the commencement of business, was not so paid in. The contention of the defendant, in answer, is that the money was placed to its credit in the Tradesmen's National Bank, and that it was in no way liable for the same as a loan or otherwise, and that any subsequent acts of its agents, in attempting to treat the deposit as a loan from the bank, were unauthorized, and not binding upon it, and were repudiated by the directors as soon as they learned of such facts. In the face of Skinner's affidavit that the drafts, the proceeds of which made up the $40,000 in question, "did not concern the defendant, being private matters between the bank and the makers," and the affidavit of Nichols, who was the president of the corporation from March 31, 1894, to January 1, 1895, that, while he was president, the company borrowed no money from the Tradesmen's National Bank, nor from any other bank or person, and that he knows that no such loan was ever authorized by the board of directors or by the executive committee, not to mention other evidence presented to the same effect, I am unable to find that the $40,000 in question was not paid in, and was not the absolute property of the defendant at the time it began business. Under such circumstances, I consider that I ought to proceed with great caution and to hesitate long before granting this application, and thereby dealing what would probably be a fatal blow to the defendant. Not only does section 1800 of the Code of Civil Procedure safeguard corporate existence by providing for a trial by jury, of course and of right, of actions under section 1798, but the proper attitude of courts in such cases is indicated in the impressive language of Judge Finch in People v. North River Sugar-Refining Co., 121 N. Y. 582, 608, 24 N. E. 834:

"The judgment sought against the defendant is one of corporate death. The state which created asks us to destroy, and the penalty invoked represents the extreme rigor of the law. Its infliction must rest upon grave cause, and be warranted by material misconduct. The life of a corporation is, indeed, less than that of the humblest citizen; and yet it envelopes great accumulations of property, moves and carries in large volume the business and enterprises of the people, and ought not to be destroyed without clear and abundant reason. That would be true even if the legislature should debate the destruction of the corporate right by a repeal of the corporate charter; but it is beyond dispute where the state summons the offender before its judicial tribunals, and submits its complaint to their judgment and review. * * * It appears to be settled that the state, as prosecutor, must show on the part of the corporation accused some sin against the law of its being which has produced, or tends to produce, injury to the public. The transgression must be not merely formal or incidental, but material and serious; and such as to harm or menace the public welfare; for the state does not concern itself with the quarrels of private litigants."

Whether there are in the present case such quarrels, as is charged, need not be considered. It is enough that the evidence does not show with sufficient clearness that any public injury is imminent. Irregularities on the part of some of the defendant's officers and agents there have been, beyond a doubt, but the good faith of the directors appears unquestioned. As long ago as May 2, 1895, by a unanimous vote, they instructed their counsel "to communicate with the superintendent of insurance, and inform him that it is the sense of the board of directors of the Equitable Mutual Fire Insurance Corporation that the company await the decision and report of the superintendent of insurance, and abide thereby, and that it will make good any deficiency in the cash of the company that in his judgment should be made good, if any." It was stated in the report of Hopkins, the expert who was engaged to make an examination of the affairs of the corporation, and whose report was in many ways most severe, and certainly was not open to the charge of partiality towards the management of the corporation, that an apparently valuable business had been built up. As the capital stock notes are available to meet any losses, and therefore public interests are not in imminent danger, and the corporation has expressed its desire to make good any deficiency in the cash, I do not think the court would be warranted in taking any action which would seriously impair, if not utterly ruin, the business that has been built up.

This conclusion is not without authority. In People v. Manhattan Mut. Fire Ins. Co. (Sup.) 12 N. Y. Supp. 264, which was a case of an application for a temporary receiver in an action under section 1785 of the Code of Civil Procedure, to dissolve a corporation upon the ground that it was insolvent, the general term of the third department said:

"One or the other of two conclusions seems irresistible: If the notes were premium notes, then the company did not comply with the terms of the act of 1853 with respect to capital stock, and has ever since been doing business upon a capital unauthorized by that act, and far below its requirements; or, if the notes were stock notes, then the company has violated the act in surrendering them to the makers before it had invested or accumulated from its surplus earnings the sum of $50,000. In either event the defendant should comply with the statute or stop business. This motion was treated and de-

fended as if it were itself the order to show cause. We are unwilling, under the circumstances, to suspend the corporate existence of the defendant, provided it is able and willing to make good its capital. We reverse the order below, but reserve the case for further and final order until the February term of the court. The defendant may, at the opening of such term, show that it has made good its capital."

The motion will be denied, but with leave to renew after notice on the part of the superintendent of insurance requiring the company to make good any impairment of capital he may certify it has sustained, if after 30 days from the giving of said notice the company fails so to do.